

# COMPLAINT FORM

(for filers who are prisoners without lawyers)

IN THE UNITED STATES DISTRICT COURT

FOR THE <u>SOUTHERN</u> DISTRICT OF <u>INDIANA</u>

<div style="border:1px solid red;">

**FILED**

<u>03/30/2022</u>

**U.S. DISTRICT COURT**
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

</div>

(Full name of plaintiff(s))

<u>JAMES E. MAYS</u>

vs

(Full name of defendant(s))

<u>GEO Group Inc, Centurion Health,</u>

<u>Wexford of Indiana, Shannon Heady,</u>

<u>Erick Falconer, John M. Nwannunu,</u>

<u>Dianna M. Johnson, Hannah Winningham,</u>

<u>Dr. Riley</u>

Case Number:

1:22-cv-00651-JPH-MPB

(to be supplied by clerk of court)

A.    PARTIES

Plaintiff is a citizen of <u>Indiana</u>, and is located at
(State)

<u>P.O. Box A, New Castle, IN 47362</u>
(Address of prison or jail)

(If more than one plaintiff is filing, use another piece of paper).

1.  Defendant <u>GEO Group, Inc.</u>
(Name)

1

is (if a person or private corporation) a citizen of _____Indiana_____

(State, if known)

and (if a person) resides at _1000 Van Noys, New Castle, IN 47362_

(Address, if known)

and (if the defendant harmed you while doing the defendant's job)

worked for _GEO Group, Inc based out of Florida_

(Employer's name and address, if known)

(If you need to list more defendants, use another piece of paper.) Continued See attached.

B.   STATEMENT OF CLAIM

On the space provided on the following pages, tell:
1.   Who violated your rights;
2.   What each defendant did;
3.   When they did it;
4.   Where it happened; and
5.   Why they did it, if you know.

1. Since March 25, 2020, and continuing to this day, Plaintiff has had to battle for his life and well being with all the defendants each of whom, notwithstanding their knowledge of Plaintiff's injury to his finger has callously and recklessly indifferent to Plaintiff's need for treatment to manage it for about two years. Their action and inaction have allowed Plaintiff's finger to become and remain severely infected and become disfigured (lateral deviation).

2. The only way that Plaintiff was finally able to obtain the particular treatment he needed to possibly find out what was wrong with his finger (a MRI) was to yield to certain of the defendant's demands that he would

take a very high dose of antibiotics, in which he had to endure on at least four occasions without any pain relief or results from the medication and to waite almost two years. Plaintiff was told on numerous occasions that there was nothing wrong with his finger and that it would heal in a year, Just give it time while defendants refused to discuss Plaintiff's finger even when he complained.

3 Beyond everything that plaintiff has already suffered, the defendants continue to disregard Plaintiff's serious medical needs. Unless Plaintiff recieves the medical evaluations, care and treatment that he desperately requires for the condition caused by the defendants deleberate indifference to the management to the inJury of Plaintiff's finger and the possibility of osteomylitis has placed Plaintiff at risk of losing his finger, and/or additional parts of his hand, and/or permanent disfigurement to his finger, as well as damage to other parts of his body.

4. The Plaintiff James E. Mays is an inmate at New Castle Correctional Facility in New Castle, Indiana. As he was working his regular Job as a law clerk in mental health on March 25, 2020, he inJured his finger. Plaintiff reported this to his supervisor and following her instructions took the incident report and went across

Continued See attached

3

C.   JURISDICTION

☒   I am suing for a violation of federal law under 28 U.S.C. § 1331, 1343 and 1391.
Rule 57 of Civil Procedure, 28 USC. § 2201 and 2202, 42 USC. § 1983;
42 U.S.C. 1997(E)

☐   I am suing under state law. The state citizenship of the plaintiff(s) is (are)
different from the state citizenship of every defendant, and the amount of
money at stake in this case (not counting interest and costs) is
$_____.

D.   RELIEF WANTED

Describe what you want the court to do if you win your lawsuit.  Examples may
include an award of money or an order telling defendants to do something or
stop doing something.

1. Enter an order requiring the defendants to immediately and without further
delay transport Plaintiff to see an independent Specialist outside the IDOC system
who can provide Plaintiff with appropriate image scan (MRI, CT scans ect.)
of his right hand ring finger to either confirm or rule out further infection of
the bones and establish a plan for appropriate treatment of his on going
finger infection, pain and swelling which IDOC, including its
contracted medical staff would be required to follow;

2. Enter an order requiring the defendants to immediately and
without further delay transport Plaintiff to see an Orthopedic Surgeon
outside the IDOC system who can provide Plaintiff with appropriate
imaging scans (x-rays, MRI, CT scans, ect.) of his right hand;

3. Award Plaintiff money damages for the permanent damage
Continued see attached

4

E.   JURY DEMAND

    ☒   Jury Demand - I want a jury to hear my case
               OR

    ☐   Court Trial – I want a judge to hear my case

    Dated this __21__ day of __March__ 20_22_.

    Respectfully Submitted,

    _James E. Mac_____
    Signature of Plaintiff

    # _885409_____
    Plaintiff's Prisoner ID Number

    _New Castle Correctional Facility_____
    _P.O. Box A, New Castle, IN 47362_____
    (Mailing Address of Plaintiff)

    (If more than one plaintiff, use another piece of paper).

## REQUEST TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING THE FILING FEE

    ☒   I **DO** request that I be allowed to file this complaint without paying the filing fee. I have completed a request to proceed in the district court without prepaying the fee and attached it to the complaint.

    ☐   I **DO NOT** request that I be allowed to file this complaint without prepaying the filing fee under 28 U.S.C. § 1915, and I have included the full filing fee with this complaint.

## DEFENDANTS CONTINUED

2. Defendant Wexford of Indiana is a private corporation in Indiana and resides at 9245 North Meridian, STE. 111, Indianapolis, IN 46260;

3. Defendant Centurion Health is a private corporation in Indiana and resides at 9245 North Meridian, STE. 111, Indianapolis, IN 46260;

4. Defendant Erick Falconer is a citizen of Indiana and resides at (Address unknown) and worked for both Wexford of Indiana and Centurion Health, Address is 9245 North Meridian, STE. 111, Indianapolis, IN 46260;

5. Defendant John M. Nwannunu is a citizen of Indiana and resides at (Address unknown) and worked for both Wexford of Indiana and Centurion Health, Address is 9245 North Meridian, STE. 111, Indianapolis, IN 46260;

6. Defendant Hannah Winningham is a citizen of Indiana and resides at (Address unknown) and worked for GEO Group, Inc., Address New Castle Correctional Facility, 1000 Van Nuys Road, New Castle, Indiana 47362;

7. Defendant Shannon Heady is a citizen of Indiana and resides at (Address unknown) and worked for GEO Group, Inc., Address New Castle Correctional Facility, 1000 Van Nuys Road, New Castle, Indiana 47362;

1 of 2

DEFENDANTS CONTINUED

8. Defendant Dianna M. Johnson is a citizen of Indiana and resides at (Address unknown) and worked for both Wexford of Indiana and Centurion Health, Address is 9245 North Meridian, STE. 111, Indianapolis, IN 46260;

9. Defendant     Riley is a citizen of Indiana and resides at (Address unknown) and worked for both Wexford of Indiana and Centurion Health, Address is 9245 North Meridian, STE 111, Indianapolis, IN 46260.

2 of 2

## STATEMENT OF CLAIM CONTINUED

the corridor to the medical department. When the Plaintiff entered the medical department he was met by Shannon Heady, ("Sgt. Heady") a prison guard whom is an employee of GEO Group, Inc. ("GEO") is a Florida based company that specializes in privatized corrections and is the correctional administrator of New Castle Correctional Facility where in its contractual arrangements the question of medical care is not within the scope of its role in the facility. Instead, the Department ("IDOC") entered into an aggreement with a contractor other than GEO to provide for inmate medical care. IDOC also restricted GEO from providing such care itself. Sgt. Heady while not being a part of the medical staff — took the incident report and demanded that Plaintiff leave the medical department. Sgt. Heady did not turn in the incident report to medical, there by denying the Plaintiff the immediate medical treatment that he needed causing the Plaintiff to waite weeks to be treated. The Plaintiff had to submitt a health care request. Because of these circumstances Plaintiff suffered undue pain, contracted a severe infection that resulted in Plaintiff now having a disfigured (lateral deviation) finger. She is sued in her individual capacity.

1 of 12

STATEMENT OF CLAIM CONTINUED)

5. After being triaged twice in which resulted in Plaintiff's finger being x-rayed, Plaintiff was seen by various providers through a period of about two years whom was employed by Wexford of Indiana, LLC whom had a contract to provide medical services to the Indiana Department of Correction from April 1, 2017 to June 30, 2021. Centurion Health of Indiana, LLC succeeded Wexford of Indiana as IDOC's medical contractor beginning on July 1, 2021, through the present whom is responsible for the overall health care for the inmates at New Castle Correctional Facility where Plaintiff was housed at the time of the alligations in the complaint,

6. Plaintiff was seen by provider, Dr. Erick Falconer starting on April 7, 2020, where Plaintiff was informed that he only had a slight infection even though Dr. Falconer had recieved the results of the x-rays that stated the possibility of osteomylitis and his observation of the acute infection and the severe swelling in Plaintiff's finger. Dr. Falconer only ordered antibiotics. On April 30, 2020, Plaintiff was seen again by Dr. Falconer and at this time Plaintiff's finger had worsen with a severe pus formation where in Dr. Falconer refused to drain it and told Plaintiff that his body would absorb it. Dr. Falconer ordered more

## STATEMENT OF CLAIM CONTINUED

antibiotics. On June 23, 2020, Plaintiff's finger had gotten worst by developing a lateral deviation at the knuckle and after recieving the same treatment over and over from various providers with no results, Plaintiff asked Dr. Falconer what was wrong with his finger and Dr. Falconer replied by saying the same thing that Dr. John said when Plaintiff was seen by him, that there was nothing wrong with Plaintiff's finger, that the finger would heal in time, give it a year, but Plaintiff would always have the lateral deviation. Dr. Falconer stated that there was an approved list of medications, treatments and anything outside this list almost never get approved. Dr. Falconer ordered more x-rays and a blood test. On July 16, 2020, after being refered to both Dr. Nwannunu and NP Johnson Plaintiff was seen by Dr. Falconer where he tried to convience Plaintiff once again that there was nothing wrong with his finger and basically would not listen to the Plaintiff's complaints and concerns about the finger and its disfigurement. On June 8, 2021, FNP Johnson refered the Plaintiff to be seen by Dr. Falconer as soon as possible, but Dr. Falconer refused to see the Plaintiff and told nurse Elliot to tell him that he was going to order a MRI. Because of these circumstances Dr Falconer failed to act aggressively enough to stop the infection in Plaintiff's right ring finger leading to the bone erosion and disfigurement of Plaintiff's finger and acted or failed to act in other ways that caused Plaintiff's health to worsen. He is sued in his individual capacity.

STATEMENT OF CLAIM CONTINUED

7. Plaintiff was seen by provider FNP Dianna M. Johnson starting on July 9, 2020, where Plaintiff was informed once again that the x-rays were negative, showed no fractures, but was not informed once again of the x-ray results that stated that there were a possibility of osteomylitis, and even though FNP Johnson had examined Plaintiff's finger she did not note the severe infection or the lateral deviation of Plaintiffs' finger. FNP Johnson only noted that Plaintiff had taken Bactrim for 15 days where in it did not cure Plaintiff's infection. FNP Johnson only ordered more antibiotics. On April 23, 2021, after suffering with the infection, swelling and pain in his finger Plaintiff was seen again by FNP Johnson where in she ordered more antibiotics and a HEP finger exercises. On May 25, 2021, Plaintiff still had not recieved the full dose of the antibiotics, where in FNP Johnson ordered even more and stated that the meds were on the approved list and I should have gotten them. On June 8, 2021, Plaintiff was seen for follow up by FNP Johnson where she noted that Plaintiff still had a swollen finger filled with infection and that the finger showed no improvement after taking ABX and oral steriods. FNP Johnson refered Plaintiff to Dr. Falconer as soon as possible. Because of these circumstances FNP Johnson failed to act aggressively enough to stop the infection in Plaintiffs' right ring finger leading to the bone erosion and disfigurement of Plaintiff's finger and acted or failed to act in other ways that caused Plaintiff's health to

4 of 12

STATEMENT OF CLAIM CONTINUED

worsen. She is sued in her individual capacity.

8. On June 8, 2020, after being seen by providers Dr. Falconer and FNP Johnson, the Plaintiff was seen by Dr. John M. Nwannunu ("Dr. John"). Upon seeing Dr. John, Plaintiff tried to explain about his pain, discomfort and his need for more antibiotics. Dr. John did not want to discuss Plaintiff's finger and even though the x-rays showed the possibility of osteomylitis, Dr. John stated that the x-rays showed there was nothing wrong with Plaintiff's finger, that Plaintiff's finger would heal in time, give it a year and just like his finger it would heal with some type of disformative. Plaintiff once again tried to not just tell Dr. John about his pain, discomfort and why he felt he needed the antibiotics, he tried to show Dr. John his finger. Dr. John became confrontational and completely ignored what Plaintiff was saying by reiterating that there was nothing wrong with Plaintiff's finger, that there may have been a slight sprain, that there was no infection as the Plaintiff was trying to explain to him that Dr. Falconer had prescribed antibiotics for him and his finger was still severely infected and that, if he would only look at his finger, he would see it. At this point Dr. Johns got highly upset and stated that Dr. Falconer may have given him antibiotics but there was no infection and since Dr. Falconer had given him antibiotics already he was not going to reorder them and the visit was over. Plaintiff left the office and nurse Julie sitting

STATEMENT OF CLAIM CONTINUED

outside the door at her station had some what over heard and asked Plaintiff what that was about and Plaintiff showed nurse Julie and explained that Dr. John refused to give him antibiotics when it was evident that he need them. Nurse Julie went to talk with the doctor to no avail. On September 20, 2021, Dr. John finally examined Plaintiff's finger and noted that Plaintiff still had swelling and residual deformity from his injury but did not note the severe infection in Plaintiff's finger. Because of certain circumstances Dr. John had to order or request an OPR for Othopedic evaluation. Dr. John ordered Plaintiff to continue buying pain relief from commasary. Because of these circumstances Dr. John failed to act aggressively enough to stop the infection in Plaintiff's right ring finger leading to the bone erosion and disfigurement of Plaintiff's finger and acted or failed to act in other ways that caused Plaintiff's health to worsen. He is sued in his individual capacity.

9. Plaintiff after enduring various conservative medical treatments that lasted almost two years was finally given a MRI on October 27, 2021 and on December 1, 2021, was finally allowed to see an outside specialist. NP Marc B. Euler an outside orthopedic specialist, whom performed the initial examination of Plaintiff's finger tried to view the provided MRI images and found them to be unreadable. NP Euler decided that he needed another

STATEMENT OF CLAIM CONTINUED

MRI and x-ray done to make a proper image review to plan his treatment for the Plaintiff's plan of care. On February 2, 2022 Dr. _____ Riley a medical doctor whom is employed by Centurion as Centurion's Regional Medical Director in the State of Indiana. Her Job and responsibilities including but not limited to overseeing the provision of off-site medical care by practioners at the state level, reviewing request for and discussing with on-site medical staff request for prisoners to recieve off-site medical care. She had final decision and policy making authority for Centurion on the issue of inmate off-site medical care approval. She was aware of Plaintiff's serious medical conditions and medical needs, but instead of continuing Plaintiff's medical treatment by the outside provider that had Just started, she stopped Plaintiff's treatment after Just one visit. She deliberately, intentionally and with a callous disregard for Plaintiff's health failed to take action to insure that Plaintiff continued to recieve the medical evaluations, care and treatment that Plaintiff required and by delaying and denying an off-site exception that had been previously approved where Plaintiff was recievens treatment, by stopping a needed procedure for Plaintiff to recieve a x-ray and a MRI, a particular kind of diagnostic technique for ploduring an image of the structure of body tissue, caused and still is causing Plaintiff's health to worsen. She is sued

STATEMENT OF CLAIM CONTINUED

in her individual capacity.

10    Wexford Health Services Inc., a state contractor that contracts with government entities and prison systems to provide medical care to incarcerated individuals. During a period of time relevant to Plaintiff's claim in this action, Wexford had a contract with IDOC to provide medical care to IDOC prisoners, including Plaintiff. Wexford has policies in place that require a special approval that is called a Fer (which is a Formulary Exception Request) for certain treatments, medications due to their cost allowing delays and denials of treatments and medications that some patients need to live or have a good quality of life, while leaving them (like Plaintiff) in pain and allowing serious medical issues to develope and worsen. Wexford was deliberately indifferent to Plaintiff's serious medical needs by "maintaining those policies and practices pursuant to which prisoners with serious medical needs are routinely denied medical care," which is the proximate cause of Plaintiff's injury. Specifically, Wexford policies or practices hindered the on-site providers from requesting certain treatments and medications, because they are basically restricted to an approved list of medications, treatments and as Plaintiff was informed by the on-site providers any request would either be turned down or they would be refered to do some other approved conservative treatment. Wexford failed to promptly provide Plaintiff with necessary care, including a diagnostic

8 of 12

procedure called a MRI, after the serious injury to his finger. That treatment was delayed because Wexford elevates financial consideration over questions of medical need and routinely ignores recommendations that on-site doctors make for off-site care, which leaves the on-site doctors hesitant in requesting the treatments or medications they know is needed for the patients immediate care.

11. Centurion Health of Indians, LLC is a company that contracts with government entities and prison systems to provide medical care to prisoners. During a period of time relevant to plaintiff's claim in this action, Centurion had a contract with IDOC to provide medical care to IDOC prisoners, including Plaintiff. Its business model, policies, practices and customs include withholding and/or delaying necessary medical care and diagnostic test from prisoners/patients like Plaintiff to save money. Centurion was deliberately indifferent to Plaintiff's serious medical needs by maintaining those policies and practices pursuant to which prisoners with serious medical needs are routinely denied medical care," which is the proximate cause of Plaintiff's on going medical condition. Specifically, Centurion policies or practices was and is contributing to the erosion of Plaintiff's knuckle and disfigurement (lateral deviation) of Plaintiff's finger by ignoring obvious symptoms of Plaintiff's medical condition, refusing to order the necessary requested diagnostic test,

STATEMENT OF CLAIM CONTINUED

or creating a sensible treatment plan, failing to ensure a continuity of care, failing to ensure adequate medical treatment. Centurion prioritizing of profits over care caused or contributed to the cause of Plaintiff's pain, suffering, the disfigurement (lateral deviation) of Plaintiff's finger, and the on going decline in Plaintiff's health.

12   Hannah Winningham is an employee of GEO whom at the time relevant to the complaint was the Grievance Specialist at the New Castle Correctional Facility. Being the Grievance Officer, she is aware of Plaintiff's serious medical conditions and medical needs, but has summarily denied, refused to respond, and claimed she never recieved Plaintiff's grievances that was personally placed in the unit officer's hand to be placed in the facility's mail. Plaintiff resorted to requesting that his counselor Ms. Dickerson personally place the grievances and any request in Ms. Winningham's personal mail box where she still denied recieving them until Plaintiff informed her that the counselor was placing them in her personal mail box. Plaintiff then recieved an immediate response. Ms. Winningham in her capacity has used the grievance process to retaliate against the Plaintiff for complaining about his medical conditions, treatments and the way he was being charged over and over by medical for an on going job related injury, including but not limited to the Centurion's deliberate indifference to his serious

STATEMENT OF CLAIM CONTINUED

medical needs. She is sued in her individual capacity.

13.   Shannon Heady (Sgt. Heady") is not a medical professional, but upon Plaintiff entering medical, she immediately requested the Plaintiff to turn over his incident report which stopped the Plaintiff from recieving the emergency treatment he need for his severely injured finger. This decision was not consistent with Sgt. Heady's training. GEO train its correctional officers, like Sgt. Heady to contact medical and/or her supervisor when an offender seeks to be seen by medical staff or is complaining about a medical condition. Sgt. Heady, being the security supervisor for the medical department should have known the correct procedure but instead chose not to attempt to contact any medical personel by phone or other wise. Sgt. Heady did not rely on the medical personel to make her decision to deny Plaintiff access to emergency medical treatment. Plaintiff was injured by GEO's policy when he sought emergency medical treatment through a GEO employee, where no medical care was provided for about two weeks. GEO's policy was not followed by Sgt. Heady, is for correctional officers and staff to contact medical staff when there exists a serious medical claim from an offender. GEO's policy also provides that an officer should issue a "Signal 3000" when an inmate appears to be in obvious or unresponsive. Sgt. Heady did not want the Plaintiff to be seen by medical and she did not follow GEO's policy to obtain care. GEO's

<u>STATEMENT OF CLAIM CONTINUED</u>

policy in itself reflects the deliberate indifference to the Plaintiff's serious medical needs and that he was injured as a result. As a prisoner, the Plaintiff does not have the ability to call 911 or obtain emergency medical care on his own. Instead, he had to rely on GEO's employees to get him the emergency medical care he needed when his finger was severely injured, and the Plaintiff should not have to "fall out" to recieve medical care for his severely injured finger. Plaintiff was only scheduled after submitting health care request.

14. GEO Group, Inc., Wexford of Indiana, LLC, and Centurion Health Services, act under color of state law by contracting to perform a government function, and their policies, practices or customs caused "the constitutional violations" alleged in the complaint.

## RELIEF WANTED CONTINUED

to his right hand ring finger;

4. Award Plaintiff money damages for the impairment of his ability to work the kind of Jobs he had before lost the ability to completely use his hand because of the deformative of his right hand ring finger and his future loss of income;

5. Award Plaintiff money damages for the years that he has suffered severe unwarranted physical pain caused by the defendants' deliberate indifference to his serious medical needs;

6. Award Plaintiff money damages for the years that he has suffered severe mental and emotional distress caused by the defendants' deliberate indifference to his serious medical needs;

7. Award Plaintiff punitive damages to punish the defendants for their callous and reckless disregard of his federally protected rights and send the message to other workers working in prison that the kind of mistreatment to which Plaintiff has been subjected will not be tolerated in a civilized society;

8. Award Plaintiff all other relief Just and proper in the premises.